**Charles C. KEECHI, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 84–2085.

United States District Court, District of Columbia.

Dec. 14, 1984.

As Corrected Feb. 11, 1985.

---

Hans Walker, Jr., Ellen Rhona Kemper, Washington, D.C., for plaintiff.

Edward J. Snyder, Patricia A. Scott-Clayton, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff, an American Indian, is a successor in interest to the Wichita Indians who, in 1891, by treaty, ceded tribal lands in Oklahoma to the United States to be held in trust in accordance with the General Allotment Act of 1887. Pursuant to the terms of the treaty and the Act, the Bureau of Indian Affairs ("Bureau") of the Interior Department holds in trust for the benefit of the plaintiff certain land located in Oklahoma. In 1971, the Bureau entered into an oil and gas lease for the land. The lease requires the lessee to pay royalties earned from oil production on the land to the Bureau, which maintains an Individual Indian Money Account ("IIM") for the benefit of the plaintiff.

On January 24, 1984, February 28, 1984, and March 14, 1984, the Internal Revenue Service ("IRS") served on the Bureau three Notices of Levy on Wages, Salary, and Other Income. The notices asserted that plaintiff owed $16,465.87 to the IRS on account of assessments made in 1982 for tax periods ending June 30, 1978. The alleged liabilities did not arise from income realized from the land lease, but from another business activity of plaintiff. On June 7, 1984, the IRS served on the Bureau a final demand for the $16,465.87 which had been subject to the levy. By letter dated June 7, 1984, the Bureau advised the IRS that plaintiff did "not have any funds" in his account with the Bureau.

Nevertheless, on July 12, 1984, plaintiff filed a complaint alleging that the Bureau held $283.03 in his account, and that the IRS sought to levy on that sum and on any future royalties paid into the Bureau for the account of plaintiff. The complaint invokes this Court's jurisdiction under 28 U.S.C. § 1353 and 25 U.S.C. § 345, and prays for a declaratory judgment that income from the land—like the land itself—is not subject to any charge or encumbrance and that any liens or levies thereon are unlawful. The complaint also seeks injunctive relief that would implement such a declaratory judgment, including a preliminary and permanent injunction that would protect the plaintiff's account at the Bureau from future IRS lien, levy, and demand.

On October 2, 1984, the Court—treating certain additional pleadings filed by the plaintiff as a request for more immediate injunctive relief, and after conducting a hearing thereon—issued a temporary restraining order barring the IRS from enforcing the levy issued January 24, 1984, against any money or profits received by the Bureau for the benefit of plaintiff after the date of the levy. Although that order has expired and the motion for a preliminary injunction is under advisement, defendants "do not contest the entry of a preliminary injunction barring defendants from retaining any of the funds received by the Bureau of Indian Affairs after the date of the levy." Memorandum in Support of Motion to Dismiss at 5.

Meanwhile, defendants have moved to dismiss on jurisdictional and venue grounds. In support of the motion, defend-

ants assert that the tax assessments underlying the lien and levies in question derive from tax obligations of plaintiff as the responsible officer of Pacific Northwest Corporation, Ltd. Therefore, defendants argue, a challenge to the lien and levies is barred by 26 U.S.C. § 7421, which forbids the bringing of any action to restrain the assessment or collection of any federal tax. Defendants also argue that 26 U.S.C. § 7426(a)(1), which might otherwise allow plaintiff to sue to challenge the levy on his property, does not provide a basis for bringing suit because that section is unavailable to "the person against whom is assessed the tax out of which such levy arose." In addition, defendants assert that subsequent to the temporary restraining order the Bureau in fact disbursed to plaintiff all funds that it held in plaintiff's account, and has returned, in the absence of a new levy, to its "normal[ ]" practice of disbursing to plaintiff all income payments "on the same day they are credited to the account, or as soon thereafter as possible." Declaration of Jack D. Smith; *see* Memorandum in Support of Motion to Dismiss at 6–7. Thus, defendants argue, a present, live controversy is absent and the case is moot. Furthermore, defendants argue, plaintiff has an independent and adequate remedy at law for any wrongful collection: a civil suit for a refund under 26 U.S.C. § 7422. Defendants also claim that the action should be dismissed as against all the individually-named defendants because suits under § 7426 can be brought, pursuant to § 7426(d), only against the United States. Finally, defendants contend that venue is improper because an action under § 7426 can be prosecuted, pursuant to 28 U.S.C. § 1402(c), only in the district where the property is situated at the time of the levy—in this case, Oklahoma.

Plaintiff replies by emphasizing that he is not suing to enjoin the collection of taxes, but rather that he is suing pursuant to 25 U.S.C. § 345 and 28 U.S.C. § 1353 as beneficiary of a trust created by the General Allotment Act and the Wichita treaty,

and that he is doing so to clear a cloud on his beneficial title to the land allotted to him and the royalties derived from it. He asserts that the levies in question and the threat of future levies illegally deny him the full benefits to which the General Allotment Act and the Wichita treaty entitle him. Contrary to defendants' contention that this action is moot, plaintiff urges that the lien and levies to date are "capable of repetition," Plaintiff's Response to Defendants' Motion to Dismiss at 7; specifically, plaintiff points to the assertion in defendants' own pleadings that defendants are not inhibited by the Court's Order of October 2, 1984 from levying on plaintiff's account at some future time. Plaintiff's Response at 4–5. Plaintiff additionally contends that this action would not be barred by 26 U.S.C. § 7421 in any event: the Bureau of Indian Affairs, a trustee for plaintiff, is, according to plaintiff, obligated to protect plaintiff's interest from the IRS lien and levies, so that plaintiff is a third party exempt by 26 U.S.C. § 7426(a)(1) from the jurisdictional bar against injunctions of tax collections that 26 U.S.C. § 7421 otherwise imposes. Plaintiff further asserts that the Tax Court has no jurisdiction over a claim such as the one asserted here.* Because, according to plaintiff, his claim under 25 U.S.C. § 345 and 28 U.S.C. § 1353 for the full benefit of an allotment is not a case respecting tax liability, it is—plaintiff contends—an appropriate subject for a declaratory judgment and an injunction from a federal district court. For this same reason, plaintiff argues that the individual defendants have been properly named as such, and that venue is not impaired by 28 U.S.C. § 1402(c) because actions under 25 U.S.C. § 345 and 28 U.S.C. § 1353 may be brought in this district pursuant to 28 U.S.C. § 1391(e).

█ If this were a suit to restrain the collection of taxes, it would be barred by 26 U.S.C. § 7421. However, plaintiff per-

---

* Plaintiff conspicuously fails, however, to deal with his legal right to sue in federal court under

26 U.S.C. § 7422 for refund of any tax erroneously collected.

suasively contends that this is not such a suit, but is rather an action by plaintiff as beneficiary of a "spendthrift" trust to protect it and the income it generates from unauthorized encumbrance.

The General Allotment Act, 25 U.S.C. §§ 331 *et seq.*, obligates the United States as trustee ultimately "to convey [the allotted land] to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever." The land is thus held by the United States as trustee and is "not subject to alienation or encumbrance by [the Indian beneficiary], except with the consent of the United States Government." *See Squire v. Capoeman*, 351 U.S. 1, 4, 76 S.Ct. 611, 614, 100 L.Ed. 883 (1956). The Court quoted with approval expert opinion that

> "It is clear that the exemption accorded tribal and restricted Indian lands extends to the income derived directly therefrom."

*Id.* at 9, 76 S.Ct. at 616, citing F. Cohen, *Handbook of Federal Indian Law* 265 (1942). Thus, the *Squire* Court concluded that the Indian plaintiff in that case was not subject to capital gains tax on the proceeds from the sale of timber from land held in trust for his benefit by the United States.

It is noteworthy that in *Squire* the taxpayer brought his tax liability to issue by paying the capital gains tax assessed by the IRS and suing for a refund. *See id.* at 5, 76 S.Ct. at 614. He did not, as here, seek injunctive relief. It could be argued, therefore, that even if this is not an impermissible suit to restrain a tax collection, the availability of a civil action by which plaintiff can recover any funds illegally seized is an adequate remedy at law which, under traditional principles of equity, precludes the declaratory and injunctive relief that plaintiff seeks.

But such a result would denigrate the broad protections that the General Allotment Act contemplated. *See Squire v. Capoeman, supra* at 6–8, 10, 76 S.Ct. at 614–615, 617. Otherwise, *any* creditor seeking to attach funds held by the Bureau for the benefit of an Indian allottee could circumvent the Act by arguing that if the attachment were illegal the beneficiary could sue at law to recover. The General Allotment Act affords more protection than that. It contemplates protection for the Indian beneficiary along the lines afforded to a beneficiary of a spendthrift trust. *See, e.g. County of Thurston, State of Nebraska v. Andrus*, 586 F.2d 1212, 1220 (8th Cir.) ("the trust established by the federal government was akin to a spendthrift trust ..."), *cert. denied*, 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1978); *Stevens v. Commissioner of Internal Revenue*, 452 F.2d 741, 747 n. 12 (9th Cir.1971). The trust property is simply not accessible to creditors, at least until after the trustee has delivered it, free of encumbrance, to the beneficiary. *See County of Thurston, State of Nebraska v. Andrus, supra*, 586 F.2d at 1221–22, 1224–25. Nor is there any indication that Congress gave the United States or its agencies any greater right than any other creditor to attach, encumber, or levy upon money or property held by the Bureau as trustee for an Indian allottee. *See Stevens v. Commissioner of Internal Revenue, supra* at 747.

In view of the foregoing, defendants' reliance on the anti-injunction provision of the Internal Revenue Code, 26 U.S.C. § 7421, is misplaced. The IRS is not proceeding here to determine plaintiff's tax liability on account of income realized from the allotted land. The IRS long ago determined the liability. The IRS is here attempting simply to collect an old and unrelated claim, indistinguishable from any other claim that the United States might assert as a creditor. The complaint makes out a case for enforcement of the General Allotment Act's spendthrift trust provisions as against the Bureau, and may not be dismissed as if it were an injunction against a tax collection effort by the IRS.

Since this is not a suit about a tax claim so much as it is a suit by plaintiff to protect his beneficial interest in property held in trust for him by an agency of the United States, neither jurisdiction nor venue is governed by the tax laws. Plaintiff is not barred from naming as individual defendants the individual officers of the vari-

ous federal agencies involved in this dispute. Also, under the general jurisdiction statutes well pleaded by plaintiff, venue lies in this district pursuant to 28 U.S.C. § 1391(e).

█ Nor does defendants' contention that the case is moot require much discussion. The IRS has never abandoned its theory that it is entitled to levy upon and subject to lien any royalty income held by the Bureau for the benefit of plaintiff, if the IRS can serve the levy or lien *after* the Bureau has received royalty income for plaintiff's benefit, but *before* the Bureau disburses that income to plaintiff. The letters and actions of the IRS toward the Bureau are sufficiently threatening and the responses of the Bureau are sufficiently acquiescent to support the conclusion that the threat to encumber allotment income held by the Bureau is quite capable of repetition. The latent threats keep the controversy alive and justiciable. *See, e.g., United States v. Hougham,* 364 U.S. 310, 312–13, 81 S.Ct. 13, 15–16, 5 L.Ed.2d 8 (1960); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911); *United States v. Trans-Missouri Freight Ass'n,* 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897).

In view of the foregoing, the accompanying order will deny defendants' motion to dismiss.